# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **JOSEPH ZAGATA, an indvidual;**<br><br>        **Plaintiff,**<br><br>vs.<br><br>**OMAHA PUBLIC POWER DISTRICT, a political subdivision of the State of Nebraska;**<br><br>        **Defendant.** | **8:16CV547**<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on the Motion for Summary Judgment, ECF No. 20, filed by Defendant Omaha Public Power District (OPPD). For the reasons stated below, the Motion will be granted.

## BACKGROUND

The following facts are those stated in the Parties' briefs, supported by pinpoint citations to evidence in the record, in compliance with NECivR 56.1[1] and Federal Rule of Civil Procedure 56.

Plaintiff Joseph Zagata, a 61-year-old man of Polish national origin, was employed as a reliability engineer at OPPD's nuclear power plant in Fort Calhoun, Nebraska, where he was responsible for a Maintenance Rule Program (MRP). The MRP was a program required by federal law and designed to ensure nuclear facilities

---

[1] *See* NECivR 56.1(b)(1):

The party opposing a summary judgment motion should include in its brief a concise response to the moving party's statement of material facts. The response should address each numbered paragraph in the movant's statement and, in the case of any disagreement, contain pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials upon which the opposing party relies. <u>Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response.</u>

comply with federal law, including regulations of the United States Nuclear Regulatory Commission (the Commission). In 2011, the Fort Calhoun facility was shut down by the Commission, and OPPD transferred Zagata and assigned him different job responsibilities. OPPD also hired an independent contractor, Exelon, to manage the Fort Calhoun facility.

In the Fall of 2013, OPPD transferred Zagata back to the MRP and Joe McManis became his immediate supervisor. By the Spring of 2014, Exelon had overhauled many of the procedures under the MRP. Under the new program, Zagata was charged with creating a database for the Fort Calhoun facility's documents designed to provide information and guidance on certain pieces of equipment. OPPD believed Zagata was not making sufficient progress on the database and hired an outside consultant, John Van Pelt, to assist. Zagata contends he was making some progress, but that he was not receiving enough help and that OPPD unreasonably expected him to implement the database "overnight." Zagata Depo., ECF No. 22-2, Page ID 106.

OPPD also asked Zagata to train other OPPD employees on the new MRP, lead expert technical panel meetings, and ensure that the systems engineers were properly evaluating equipment performance. However, Van Pelt ultimately assumed each of these responsibilities. OPPD contends Zagata disregarded his training and oversight responsibilities, and was not effective at leading the expert technical panel meetings. Zagata claims Van Pelt usurped his responsibilities over his objection. When the Fort Calhoun facility submitted its 2014 Maintenance Rule Health Report, the Commission assigned the facility its lowest rating. By 2015, the facility's Commission of the facility

rating improved, but the degree to which the rating improved is disputed. Zagata contends he contributed to the improvement.

Zagata's 2014 mid-year review and his 2014 annual review stated his job performance was below expectations; and in December of 2014, his supervisor, McManis, placed him on a performance improvement plan (PIP). McManis instructed Zagata to take more leadership over the MRP, to improve the Commission's rating of the facility, and stop relying on Van Pelt to perform his responsibilities. Other OPPD reliability engineers also were placed on PIPs. Without providing first names, Zagata's statement of facts identified them as Boston and Swierczyk.

Again, in 2015, Zagata's mid-year review stated his job performance was below expectations and McManis concluded that Zagata's performance had not improved under the PIP. Accordingly, McManis decided to terminate Zagata's employment in August 2015. A former Exelon employee identified as Haraj assumed Zagata's MRP responsibilities. Zagata complained that McManis did not meet with him during the PIP, that his PIP lasted several months longer than either Boston's or Swierczyk's, and that his performance had improved. Neither Boston nor Swierczyk was terminated, because OPPD believed their performance had sufficiently improved. Zagata also complained that he was placed at a disadvantage because the MRP was not managed for ten months during the 2011 shut down, which created a backlog of work for him to complete. It is undisputed that neither McManis nor any other supervisors made comments about Zagata's age or national origin.

On December 15, 2016, Zagata filed his Complaint, ECF No. 1, and asserted a claim for age discrimination under the Age Discrimination in Employment Act (ADEA),

3

29 U.S.C. § 623(a)(1), and the Nebraska Age Discrimination in Employment Act (NADEA), Neb. Rev. Stat. § 48-1004. He also asserted a claim for discrimination on the basis of his national origin—Poland—under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2(a), and the Nebraska Fair Employment Practices Act, Neb. Rev. Stat. § 48-1104(1). OPPD's Motion for Summary Judgment asks the Court to dismiss each of Zagata's claims.

## STANDARD OF REVIEW

"Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Garrison v. ConAgra Foods Packaged Foods, LLC*, 833 F.3d 881, 884 (8th Cir. 2016) (citing Fed. R. Civ. P. 56(c)). "Summary judgment is not disfavored and is designed for every action." *Briscoe v. Cty. of St. Louis*, 690 F.3d 1004, 1011 n.2 (8th Cir. 2012) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc)). In reviewing a motion for summary judgment, the Court will view "the record in the light most favorable to the nonmoving party . . . drawing all reasonable inferences in that party's favor." *Whitney v. Guys, Inc.*, 826 F.3d 1074, 1076 (8th Cir. 2016) (citing *Hitt v. Harsco Corp.*, 356 F.3d 920, 923–24 (8th Cir. 2004)). Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Se. Mo. Hosp. v. C.R. Bard, Inc.*, 642 F.3d 608, 618 (8th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The moving party need not produce evidence showing "the absence of a genuine issue of material

fact." *Johnson v. Wheeling Mach. Prods.*, 779 F.3d 514, 517 (8th Cir. 2015) (quoting *Celotex*, 477 U.S. at 325). Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *St. Jude Med., Inc. v. Lifecare Int'l, Inc.*, 250 F.3d 587, 596 (8th Cir. 2001) (quoting *Celotex*, 477 U.S. at 325).

In response to the moving party's showing, the nonmoving party's burden is to produce "specific facts sufficient to raise a genuine issue for trial." *Haggenmiller v. ABM Parking Servs., Inc.*, 837 F.3d 879, 884 (8th Cir. 2016) (quoting *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 853 (8th Cir. 2012)). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial." *Wagner v. Gallup, Inc.*, 788 F.3d 877, 882 (8th Cir. 2015) (quoting *Torgerson*, 643 F.3d at 1042). "[T]here must be more than the mere existence of some alleged factual dispute" between the parties in order to overcome summary judgment. *Dick v. Dickinson State Univ.*, 826 F.3d 1054, 1061 (8th Cir. 2016) (quoting *Vacca v. Viacom Broad. of Mo., Inc.*, 875 F.2d 1337, 1339 (8th Cir. 1989)).

In other words, in deciding "a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Wagner*, 788 F.3d at 882 (quoting *Torgerson*, 643 F.3d at 1042). Otherwise, where the Court finds that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," there is no "genuine issue of material fact" for trial and summary judgment is appropriate. *Whitney*, 826 F.3d at 1076 (quoting *Grage v. N. States Power Co.-Minn.*, 813 F.3d 1051, 1052 (8th Cir. 2015)).

## DISCUSSION

**Age Discrimination Under the ADEA**

Zagata's claim for age discrimination under the ADEA and the NADEA[2] will be dismissed because he has presented no direct evidence of age discrimination and he has failed to discharge his burden under the *McDonnell Douglas*[3] framework.

"The ADEA makes it 'unlawful for an employer to . . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.'" *Onyiah v. St. Cloud State Univ.*, 684 F.3d 711, 719 (8th Cir. 2012) (quoting 29 U.S.C. § 623(a)(1)). "A plaintiff may establish her claim of intentional age discrimination through either direct evidence or indirect evidence." *Tusing v. Des Moines Indep. Cmty. Sch. Dist.*, 639 F.3d 507, 515 (8th Cir. 2011) (quoting *King v. United States*, 553 F.3d 1156, 1160 (8th Cir. 2009)). Zagata does not argue there is any direct evidence of age discrimination.

"Where the plaintiff presents indirect evidence of discrimination, the court analyzes [the plaintiff's] claim under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Id.* Under the *McDonnell Douglas* framework, a plaintiff must first establish a prima facie case with respect to his or her claim. *Bunch v. Univ. of Ark. Bd. of Trs.*, 863 F.3d 1062, 1068 (8th Cir. 2017) (quoting *Moody v. Vozel*, 771 F.3d 1093, 1096 (8th Cir. 2014)). "If the plaintiff satisfies the prima facie case, the burden shifts to the employer to provide a 'legitimate, non-

---

[2] "Nebraska's age discrimination law is interpreted in conformity with the ADEA." *Schultz v. Windstream Commc'ns, Inc.*, 600 F.3d 948, 953 n.2 (8th Cir. 2010).

[3] 411 U.S. 792 (1973).

discriminatory justification for its adverse employment action.'" *Id.* "If the employer meets this burden, the plaintiff must 'prove the employer's justification is a mere pretext for discrimination.'" *Id.*

"A prima facie age-discrimination claim under the ADEA requires that the plaintiff show (1) she 'was at least 40 years old; (2) was qualified to perform her job; (3) was terminated; and (4) was replaced by another person sufficiently younger to permit the inference of age discrimination.'" *Olsen v. Capital Region Med. Ctr.*, 713 F.3d 1149, 1155 (8th Cir. 2013); *see also Hilde v. City of Eveleth*, 777 F.3d 998, 1004 (8th Cir. 2015). However, if "the plaintiff's responsibilities were not reassigned to a specific individual, . . . [the plaintiff] must satisfy the fourth element of the *prima facie* case by showing 'age was a factor in the employer's decision to terminate.'" *Hitt v. Harsco Corp.*, 356 F.3d 920, 924 (8th Cir. 2004) (quoting *Yates v. Rexton, Inc.*, 267 F.3d 793, 799 (8th Cir. 2001)).[4]

It is undisputed that "a former Exelon employee named Haraj took over responsibility for the [MRP] following [Zagata's] termination." Pl.'s Br. Mot. Summ. J., ECF No. 25, Page ID 227. Accordingly, Zagata's responsibilities were reassigned to a specific individual and, therefore, he must establish a prima facie case by showing that

---

[4] In *Yates*, the Eighth Circuit explained that

> Ordinarily, replacement by a younger worker is sufficient to establish a prima facie case. However, in recognition that duties have to be redistributed within the employer's remaining workforce after a reduction-in-force, redistribution to a younger person is not circumstantial evidence of discrimination. Instead, in meeting [their] burden under the fourth factor, [plaintiffs] must come forward with some additional evidence that age played a role in [their] termination."

267 F.3d at 799.

7

his replacement was someone sufficiently younger to permit an inference of discrimination.  *See Hitt*, 356 F.3d at 924; *see also Yates*, 267 F.3d at 799.

At his deposition, Zagata testified his replacement was "about [his] age." Zagata Depo., ECF No. 22-2, Page ID 135.  Now, Zagata argues he actually "did not know [his replacement's] age[ ]" Pl.'s Br. Mot. Summ. J., ECF No. 25, Page ID 227, and there is no other evidence in the record that provides his replacement's age.  Thus, not only has Zagata failed to provide any evidence that he was "replaced by another person sufficiently younger to permit the inference of age discrimination," but his own testimony suggests he was not.  *Olsen*, 713 F.3d at 1155.  Accordingly, Zagata has not met his burden under the *McDonnell Douglas* framework of establishing a prima facie case of age discrimination under the ADEA or the NADEA.  This claim will be dismissed.

**Discrimination on the Basis of National Origin Under Title VII**

Similarly, Zagata's claim for discrimination on the basis of national origin under Title VII and the NFEPA[5] will be dismissed because he has failed to present any direct evidence of discrimination on the basis of his national origin and he has failed to satisfy the *McDonnell Douglas* burden-shifting framework.

Under Title VII, it is "an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . national origin." 42 U.S.C. § 2000e-2(a).  Absent direct evidence of

---

[5] "Both the Nebraska Supreme Court and [the Eighth Circuit] have stated that NFEPA is patterned after Title VII, and, therefore, it is appropriate to consider federal court decisions construing the federal legislation when considering questions under the NFEPA." *Al-Zubaidy v. TEK Indus., Inc.*, 406 F.3d 1030, 1039 (8th Cir. 2005) (internal quotations omitted).

discrimination, a plaintiff must satisfy the *McDonnell Douglas* burden-shifting framework by first establishing a prima facie case of discrimination. *Guimaraes v. SuperValu, Inc.*, 674 F.3d 962, 973 (8th Cir. 2012). Zagata does not argue there is any direct evidence of discrimination based on his national origin.

To establish a prima facie case, Zagata must show he "(1) is a member of a protected group; (2) was meeting the legitimate expectations of the employer; (3) suffered an adverse employment action; and (4) suffered under circumstances permitting an inference of discrimination." *Bunch v. Univ. of Ark. Bd. of Trs.*, 863 F.3d 1062, 1068 (8th Cir. 2017) (quoting *Moody v. Vozel*, 771 F.3d 1093, 1096 (8th Cir. 2014)).

OPPD argues Zagata has not shown that he was meeting its legitimate expectations or that the circumstances of his termination permit the inference of discrimination. Zagata presented no argument opposing summary judgment on his Title VII discrimination claim. *See* Pl.'s Br. Mot. Summ. J., ECF No. 25, Page ID 229-33. Instead, his opposition brief only provided statements of fact in response to OPPD's statements of fact pursuant to NECivR. 56.1(b), which asserted that Zagata believed his non-Polish co-workers regularly received more deadline extensions than he did and that unidentified coworkers made Polish jokes. *See* Pl.'s Br. Mot. Summ. J., ECF No. 25, Page ID 227-29. However, the only person Zagata identified as receiving more deadline extensions than he had received was also Polish, Zagata Depo., ECF No. 22-2, Page ID 127, and Zagata testified that his supervisor, McManis, never made any Polish jokes or comments, *id.* at 126. Zagata also stated he was treated differently than

9

Boston and Swierczyk when each was put on a PIP. Swierczyk is Polish and Boston's national origin is unknown.

Based on these statements of fact and the lack of any legal argument in support of his Title VII discrimination claim, Zagata has failed to show that he was meeting OPPD's legitimate expectations or that the circumstances of his termination permit an inference of discrimination. Accordingly, his claim for discrimination on the basis of national origin under Title VII and the NFEPA will be dismissed because he has failed to establish a prima facie case.

IT IS ORDERED:

1. The Motion for Summary Judgment, ECF No. 20, filed by Defendant Omaha Public Power District, is granted;
2. This action is dismissed, with prejudice; and
3. A separate judgment will be entered.

Dated this 5th day of March, 2018.

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge